784 F.2d 933
 Milo BURROUGHS, Plaintiff-Appellant,
v.
OFFICE OF PERSONNEL MANAGEMENT, an agency of the United
States; John O. Marsh, Secretary of the Army; Department
of the Army, an agency of the United States; Gust Pappas;
Raymond Michael; and the United States of America,
Defendants-Appellees.
 No. 84-4064.
 United States Court of Appeals,
Ninth Circuit.
 March 7, 1986.
 
 Joseph F. Quinn, McCormick, Hoffman, Rees & Faubion, Tacoma, Wash., for plaintiff-appellant.
 Marie G. Creson, Asst. U.S. Atty., Tacoma, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before GOODWIN, SCHROEDER, and BEEZER, Circuit Judges.
 
 ORDER
 
 1
 In its petition for rehearing, the government asks that we set aside our decision, 764 F.2d 1300 (9th Cir.1985) and follow a District of Columbia Circuit decision filed approximately one month after our opinion in this case. Barnhart v. Devine, 771 F.2d 1515 (D.C.Cir.1985). The D.C. Circuit in Barnhart held that classification decisions are subject to the limited remedies provided under the Civil Service Reform Act (CSRA) Id. at 1523. Under Barnhart, an employee aggrieved by a decision of the Office of Personnel Management (OPM) must seek redress before the Merit Systems Protection Board (MSPB) through the Office of Special Counsel. Id. at 1524. It is the first case to hold that classification decisions of the OPM are not subject to judicial review.
 
 
 2
 While the government now wishes us to decide this case in the context of the Barnhart decision, it has never in this litigation argued that the Office of Special Counsel would provide a meaningful review of appellant's contentions. Even in its petition for rehearing the government does not fully accept the holding of Barnhart that a classification decision which violates the standards of the Classification Act is a prohibited personnel practice properly redressable by the MSPB. In fact, in this case both appellant and the government originally agreed that the district court should review the decision of the OPM.[1]
 
 
 3
 If we were to reconsider our decision in the light of the subsequent D.C. Circuit decision in Barnhart, and assuming arguendo we were further to conclude that we agree with it, we would unfairly require this appellant to try to institute new administrative remedies after years of protracted administrative and judicial proceedings. We accordingly decline to reconsider our decision in this case in the light of a later decision in another circuit.
 
 
 4
 Our denial of rehearing in this case, however, does not preclude this Circuit from considering the Barnhart decision in cases which may follow this one, and in which this court can decide on the basis of a fully developed record the questions raised by that opinion. Since our opinion was entered before Barnhart, it cannot be regarded as either agreeing or disagreeing with the District of Columbia Circuit. Our decision to deny rehearing is therefore without prejudice to the government's litigating in another case the issues raised in its petition for rehearing and discussed in Judge Beezer's dissent to the denial of rehearing. Undecided as well are issues not raised in the government's petition for rehearing, but suggested by legal developments subsequent to our decision, including the question whether judicial review in classification matters should be in the federal circuit. See Barnhart, 771 F.2d at 1524 n. 15.
 
 
 5
 The panel as constituted above has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.
 
 
 6
 The full court has been advised of the suggestion for rehearing en banc, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35(b).
 
 
 7
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 
 BEEZER, Circuit Judge, dissenting:
 
 8
 The defendant-appellees (hereinafter OPM) in Burroughs v. Office of Personnel Management, 764 F.2d 1300 (9th Cir.1985), moved for rehearing and have suggested rehearing en banc.
 
 
 9
 OPM argues that the district court lacked the subject-matter jurisdiction to issue a writ of mandamus. OPM cites the recent decision of the District of Columbia Circuit in Barnhart v. Devine, 771 F.2d 1515 (D.C.Cir.1985), in support of its contention and asserts that this court's decision in Veit v. Heckler, 746 F.2d 508 (9th Cir.1984) is controlling. The majority of the panel has voted to deny OPM's motion for rehearing. Upon reconsideration, I conclude that alternative remedial avenues exist and, therefore, mandamus will not lie.
 
 
 10
 We held that the district court had jurisdiction to review the OPM's decision under the Mandamus Act, 28 U.S.C. Sec. 1361. Burroughs, 764 F.2d at 1303. We reasoned that exercise of mandamus jurisdiction did not conflict with the remedial scheme provided by the Civil Service Reform Act (CSRA) because the CSRA did not concern job classifications. Id. at 1302. We implicitly recognized that mandamus jurisdiction will not lie if alternative remedial avenues exist. Id. We relied on the D.C. Circuit's decision in Haneke v. Secretary of Health, Education & Welfare, 535 F.2d 1291 (D.C.Cir.1976), for the proposition that classification decisions are judicially reviewable under the Mandamus Act. Burroughs, 764 F.2d at 1302. We rejected the argument that Carducci v. Regan, 714 F.2d 171 (D.C.Cir.1983), overruled Haneke. Id. We reasoned that Carducci, unlike Haneke and the instant case, was a proceeding under the CSRA, not the Mandamus Act. Id.
 
 
 11
 The District of Columbia Circuit in Barnhart held that mandamus would not lie in a similar case. In Barnhart, several GS-12 National Weather Service (NWS) employees requested OPM to compare their duties to the duties of other NWS employees who were classified as GS-13s. OPM refused to make position-to-position comparisons. The employees sought a writ of mandamus in the district court, alleging violations of Chapter 51 of Title 5 of the United States Code. The district court dismissed and the D.C. Circuit affirmed. The D.C. Circuit's restatement of the district court's opinion summarizes the D.C. Circuit's reasoning:
 
 
 12
 In the District Court's view, the gravamen of appellants' complaint was that the Department of Commerce and OPM had engaged in a "prohibited personnel practice," as defined by the [CSRA], and that, in consequence, the employees were required to present their grievance to the Office of Special Counsel, an entity created by the CSRA to investigate federal civil service employees' complaints and to bring meritorious claims before the Merit Systems Protection Board. The District Court further concluded that appellants' mandamus petition would properly lie only against the Office of Special Counsel, if that entity failed or refused to carry out its responsibility to determine whether reasonable grounds supported their allegations. We agree with the District Court's analysis and therefore affirm.
 
 
 13
 Barnhart, 771 F.2d at 1516-17 (citations omitted). The D.C. Circuit rejected the employees' argument that Haneke survived passage of the CSRA. Id. at 1523-24. The Barnhart court also found Carducci instructive. Id. at 1524 n. 16. The D.C. Circuit's analysis in Barnhart, therefore, squarely contradicts our view in Burroughs and removes the precedential underpinnings upon which we relied.
 
 
 14
 Although this court's holding in Veit is distinguishable from the facts of the instant case,[1] Veit supports OPM's position. In Veit we stated that "failure to include some types of nonmajor personnel action within the remedial scheme of so comprehensive a piece of legislation [as the CSRA] reflects a congressional intent that no judicial relief be available--that the matter be deemed committed to agency discretion by law." Veit at 511 quoting Carducci at 174. The Veit opinion, therefore, provides authority for the argument that the district court may not review the merits of classification decisions even if such decisions are not covered by the CSRA. The decisions of other circuits support the view that the CSRA provides the exclusive remedy for federal employees. See Weatherford v. Dole, 763 F.2d 392, 394 (10th Cir.1985); Pinar v. Dole, 747 F.2d 899, 913 (4th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); Braun v. United States, 707 F.2d 922, 926 (6th Cir.1983); Carter v. Kurzejeski, 706 F.2d 835, 840 (8th Cir.1983); Broadway v. Block, 694 F.2d 979, 986 (5th Cir.1982).
 
 
 15
 Moreover, careful examination of the relevant code sections indicates that appellant's complaint constituted an allegation of a prohibited personnel practice, and therefore was covered by the CSRA remedial scheme. Section 2302(a)(1) of Title 5 of the U.S. Code states that for the purpose of Title 5, "prohibited personnel practice" means any action described in section 2302(b). 5 U.S.C. Sec. 2302(a)(1). Section 2302(b)(11) states that:
 
 
 16
 [a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action shall not, with respect to such authority ... take or fail to take any other personnel action if the taking or failure to take such action violates any law, rule, or regulation implementing, or directly concerning the merit system principles contained in section 2301 of this title.
 
 
 17
 5 U.S.C. Sec. 2302(b)(11). The definition of "prohibited personnel practice" contained in section 2302(b)(11), therefore, requires the existence of five elements: 1) the defendant must have the authority to take, recommend, or approve an action, 2) the defendant must have taken or failed to have taken such action, 3) the action or inaction must be a "personnel action," 4) the law, rule, or regulation that the action or inaction allegedly violates must implement or directly concern a merit system principle, and 5) the action or inaction in fact must violate such law, rule, or regulation.
 
 
 18
 OPM clearly had the authority to reclassify appellant's position. 5 U.S.C. Sec. 5112. OPM's refusal to reclassify appellant's job is the crux of appellant's complaint. The only remaining questions raised by section 2302(b)(11), therefore, are whether OPM's refusal to reclassify constituted a personnel action, whether the classification provisions of Chapter 51 of Title 5 of the U.S. Code "directly concern" merit system principles as enumerated in section 2301, and whether OPM's refusal to reclassify appellant's position violated the provisions of Chapter 51. If the first two of the remaining issues are answered affirmatively, the question of violation is for the Office of Special Counsel and the Merit System Protection Board to decide. Barnhart, 771 F.2d at 1526 n. 20; Carducci at 175.
 
 
 19
 Section 2302(a)(2)(A) defines a personnel action, inter alia, as "a decision concerning pay, benefits, or awards ..." 5 U.S.C. Sec. 2302(a)(2)(A)(ix). A plain reading of the phrase, "a decision concerning pay," must include the classification and reclassification of a given position; such classifications directly affect an employee's rate of pay. 5 U.S.C. Sec. 5101.[2]
 
 
 20
 In addition to constituting a personnel action, a refusal to reclassify directly concerns at least one of the merit system principles enumerated in section 2301. Section 2301(b)(3) specifies that "[e]qual pay should be provided for work of equal value ..." 5 U.S.C. Sec. 2301(b)(3). The equal pay for equal work principle is the primary focus of Chapter 51 of Title 5. See Barnhart, 771 F.2d at 1526 n. 20. Section 5101 of Title 5 provides:
 
 
 21
 It is the purpose of this chapter to provide a plan for classification of positions whereby ... in determining the rate of basic pay which an employee will receive ... the principle of equal pay for substantially equal work will be followed ...
 
 
 22
 5 U.S.C. Sec. 5101. Section 5112, under which the appellant in this case brought suit, implements the general purpose of Chapter 51 by authorizing OPM to reclassify a position on an employee's request. 5 U.S.C. Sec. 5112. Action or inaction under section 5112, therefore, implicates the merit system principles and triggers the provisions governing prohibited personnel practices.
 
 
 23
 Since the CSRA provides an elaborate administrative grievance mechanism for complaints based on prohibited personnel practices, exercise of mandamus by the district court was improper.
 
 
 24
 I would grant OPM's motion for rehearing.
 
 
 
 [1]
 The government changed its position in that regard only after the D.C. Circuit decided Carducci v. Regan, 714 F.2d 171 (D.C.Cir.1983), a case which did not involve a claim of violation of the Classification Act, and which our opinion in this case distinguished
 
 
 [1]
 In Veit, the employee sought district court review of a performance evaluation, whereas in the instant case the employee seeks review of a refusal to reclassify
 
 
 [2]
 Additionally, the definitions of personnel action enumerated in section 2302(a)(2)(A) are drafted broadly and encompass a wide range of employment decisions and actions. Section 2302(a)(2)(A) reflects no intent to exclude classification decisions from its broad scope. Moreover, to construe section 2302(a)(2)(A)(ix) narrowly would eviscerate section 2302(a)(2)(A)(x), which defines personnel action as "any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level." 5 U.S.C. Sec. 2302(a)(2)(A)(x). If an increase in duties constituted a personnel action and a reduction in pay classification did not, agencies could achieve the same result, that is, cost savings, simply by reducing the classification of a given position. A classification decision, therefore, is a personnel action within the meaning of section 2302
 Although the instant case involves a refusal to reclassify rather than an actual reclassification, the distinction is irrelevant. Section 2302(a)(2)(A)(ix) refers to "a decision concerning pay;" it does not mention either classification or refusal to classify expressly. A decision not to reclassify is as much a decision concerning pay as is a decision to reclassify. Exclusion of such refusals to reclassify from the definition of "decision concerning pay," logically would require exclusion of actual decisions to reclassify.