**Sallie DAVIS, Plaintiff,**

v.

**BELK–HUDSON COMPANY OF TIFTON, INC., Defendant.**

**No. 7:95–cv–5 (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

May 12, 1997.

Chevene Bowers King, Jr., Albany, GA, for Sallie Davis.

Edgar W. Ennis, Jr., Macon, GA, for Belk–Hudson Co. Tifton, Inc.

## ORDER

OWENS, District Judge.

Before the court is defendant's motion to dismiss this action for failure to perfect service and for lack of personal jurisdiction. The court has received and reviewed briefs from the parties, and an evidentiary hearing was held in Macon on April 11, 1997, to ascertain the facts. Having carefully considered the record as a whole and the arguments of counsel, the court issues the following order.

### BACKGROUND

Plaintiff filed this § 1981 action alleging a hostile work environment and race discrimination in January 1995. Plaintiff, through her attorney Chevene B. King, Jr., elected not to serve defendant by mail as allowed by FEDERAL RULE OF CIVIL PROCEDURE ("FRCP") 4(d), but chose instead to wait until the 117th day after filing the case to obtain a summons from the Clerk and attempt personal service. Plaintiff's counsel hired Van L. McMillan, an off-duty police officer with no prior experience in serving civil process, to accomplish the service required by FRCP 4(c).

This motion by defendant was prompted by a show cause order issued by the court after a periodic review of the file on January 7, 1997. In that order, the court noted the following: (1) the complaint was filed on January 12, 1995; (2) on February 28, 1996, a court employee contacted plaintiff's counsel to inquire about the status of the case, because proof of service had still not been filed; and (3) plaintiff's counsel King responded with a letter dated March 8, 1996, stating that he hoped to have the process server sign the declaration of service within a few days. Plaintiff's counsel did not file any proof of service with the court until December 1996. At this time, defendant had still not filed an answer, and yet plaintiff had not moved for entry of a default. The subsequent factual dispute over whether service was perfected impelled the court to schedule an evidentiary hearing in order to allow both sides to present evidence as to what was actually served on May 9, 1995.

Defendant argues that Van McMillan served defendant's employee that day only with the summons, but not the complaint, and that the case should be dismissed because 27 months have passed since the filing of the lawsuit and service has still not been perfected. Plaintiff alleges that service was perfected in accordance with FRCP 4(c) on May 9, 1995, or alternatively, that even if she did not perfect service in accordance with the rule on that date, she should be allowed to do so now.

### EVIDENCE

In an attempt to meet her burden of proving that service was perfected, plaintiff relies on (1) a proof of service form indicating that service was perfected on May 9, 1995; (2) an affidavit prepared and signed by Van McMillan alleging that he remembered serving a paper that "mentioned 'Discrimination'" (i.e. that included information about the subject matter of the lawsuit); (3) an affidavit prepared by plaintiff's attorney King and also signed by McMillan which states that complete service was perfected; and (4) McMillan's testimony at the evidentiary hearing.

The proof of service form bears the date May 9, 1995, the date service was allegedly

made on defendant. However, McMillan testified that he did not actually execute the document until sometime in December 1996, at plaintiff's attorney King's request (Tr. of hearing, at 35–36). Furthermore, some of the information on the form was not written by McMillan, but was filled in by someone else (Tr. at 36). McMillan testified that when he signed the proof of service in December 1996, he did not have a clear understanding of the documents involved, did not have a clear memory of the events of May 9, 1995, and in fact could not remember whether he had served both the complaint and summons on that day (Tr. at 45, 51).

At the hearing, defendant presented Ms. Alice Pitts, the Belk–Hudson employee who accepted the attempted service from McMillan. Pitts clearly remembered the events of May 9, 1995, remembered receiving only the single sheet of paper that constituted the summons, and specifically remembered asking McMillan if she needed anything other than the summons (Tr. at 7). Ms. Pitts recognized the name of the plaintiff on the summons, and even went so far as to contact a docket clerk of this court to learn the case number and subject matter of the suit (Tr. at 8–10).

The story of how the two differing affidavits came to be signed by McMillan is somewhat convoluted, and must be considered in light of McMillan's testimony. McMillan testified that two days before he signed the affidavit prepared by plaintiff's attorney King, he prepared his own sworn statement and signed it before a notary public. These two affidavits differ in one crucial aspect: the one prepared by King states that McMillan served both the complaint and the summons, while the one prepared by McMillan himself two days earlier states only that he remembered "reading a section of the papers which mentioned 'Discrimination'". McMillan's own statement proceeds to state that he was not certain what papers King gave him to serve (Def. Exh. 3).

The veracity of the February 28, 1997 affidavit prepared by plaintiff's attorney King is further called into question by facts elucidated by defendant's counsel in preparing defendant's motion to dismiss. In response to the court's order requiring plaintiff to show cause why the case should not be dismissed for failure to perfect service, defense counsel located McMillan in February 1997 before he signed either of the affidavits in question. In a telephone conversation, McMillan admitted to defense counsel that he remembered serving only one sheet of paper to defendant's employee on May 9, 1995. Defense counsel then asked McMillan if he would be willing to sign an affidavit stating that he had only served one sheet of paper, and McMillan stated at that time that he would (Tr. at 38–40). When McMillan received the affidavit prepared by defense counsel stating that he had only served the summons, he did not sign it because he "wasn't comfortable with it" (Tr. at 40).

Soon after McMillan spoke to defense counsel on the telephone, he was contacted by plaintiff's counsel King and asked if he would come in to King's office. At King's office, King asked McMillan to sign an affidavit King had prepared, but McMillan refused. King then brought out another affidavit which McMillan thought to be similar to the one he himself had prepared, and McMillan signed this affidavit.

This second affidavit presented by King and signed by McMillan is the one King filed with the court in response to defendant's motion to dismiss. Contrary to what McMillan thought when he signed King's affidavit, it was not similar to his own affidavit in that it attempts to prove that both the complaint and summons were served on May 9, 1995. Moreover, it is directly controverted by McMillan's own testimony and by the affidavit he himself prepared and signed, as well as by the testimony of Alice Pitts.

### DISCUSSION

■ FRCP 4(m) provides that the court may dismiss an action if service is not perfected within 120 days of the filing of the complaint. Service is perfected, and personal jurisdiction obtained over the defendant, only when the complaint and summons are both served. *Bolivar v. Director of the FBI,* 846 F.Supp. 163, 166 (D.P.R.1994). Thus, if, as defendant claims, only the summons was served, then plaintiff failed to perfect service

within the time contemplated by the rules, and the court may dismiss the action without prejudice. However, if the plaintiff shows good cause for the failure to perfect service within that time, the court may extend the time to perfect service for an appropriate period. FRCP 4(m).

■ The facts known to the court through documentary evidence and the evidentiary hearing leave absolutely no doubt that plaintiff's process server failed to serve defendant's employee with the complaint on May 9, 1995. The documentary evidence relied upon by plaintiff—the proof of service and the affidavit prepared by plaintiff's counsel—is discredited beyond repair by McMillan's own affidavit and testimony. Most convincing on this point is the decisive and unimpeached testimony of Alice Pitts. The court cannot conceive of any other explanation for her calling an employee of this court to learn the docket number and subject matter of this case than that she was not provided the complaint. The court therefore finds that plaintiff has failed to prove that service was perfected on May 9, 1995, and that defendant has never been properly served despite the fact that the complaint was filed more than two years ago.

■ It is not disputed that defendant subsequently learned of the lawsuit independently. Nevertheless, actual notice does not cure defectively executed service. *Schnabel v. Wells*, 922 F.2d 726, 728 (11th Cir.1991 ). Nor does the fact that plaintiff may now face a statute of limitations problem prevent dismissal.[1] *Id.* at 729. Plaintiff has not shown any reason why the court should allow her to perfect service at this late date, more than

two years after the complaint was filed and four years after plaintiff's employment with defendant came to an end. Allowing plaintiff to perfect service at this late date would severely prejudice defendant's ability to conduct relevant discovery, and force the defendant to pay the penalty for plaintiff's counsel's incompetence.

### CONCLUSION

Pursuant to FRCP 4(m) and for the reasons stated above this action is **DISMISSED WITHOUT PREJUDICE.**

The court cannot help but remark that the atrociously incompetent and dilatory conduct displayed by plaintiff's counsel in this matter is nothing short of astounding. Many of his decisions and omissions in prosecuting this case defy logic and any recognizable standards of professionalism: failure to file suit until the statute of limitations was nearly past; failure to perfect service by mail, then waiting to attempt personal service until 117 days after the complaint was filed; failure to ensure that service was properly made and instead hiring a server who had no experience in serving civil process; failure to procure proof of service until repeatedly prompted by the court; failure to move for entry of default despite the absence of an answer for nearly two years; and failure to promptly respond to the court's prompts when deficiencies in the proof of service were brought to his attention.[2]

This court strives to reach the merits of every plaintiff's case, and therefore usually forgives procedural peccadilloes and honest

---

1. Plaintiff filed this § 1981 action on January 12, 1995. Defendant Belk–Hudson had terminated plaintiff's employment on January 13, 1993. The statute of limitations for civil rights cases is the two-year period adopted from personal injury claims under Georgia law. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); O.C.G.A. § 9–3–33. Thus, only the last two days of plaintiff's employment are within the limitations period, and most of the claims asserted in the complaint would be time-barred even if the court were to deny this motion to dismiss. However, in light of the court's present holding, any claims not already time-barred will in all likelihood be barred from being raised

in a new complaint under the applicable statute of limitations.

2. All of this does not mention that Mr. King in all likelihood attempted to cover his tracks and hide his mistakes by manufacturing the necessary proof of service and coaxing the process server into signing a false affidavit. Because such an allegation cannot be proven beyond doubt, the court declines to take action at this time other than to report the apparent and provable deficiencies in Mr. King's representation to the State Bar for appropriate action.

mistakes. However, forgiving the actions of plaintiff's counsel in this matter would prejudice the defendant to an unacceptable degree. Unfortunately, it is usually the client who suffers from poor representation. Plaintiff's counsel is admonished to learn from his mistakes before other clients are injured and more serious consequences result.